### Layne, et al. v. Layne, et al.

(Decided November 8, 1917.)

### Appeal from Floyd Circuit Court.

1. Trespass—Action—Evidence.—Where both parties to an action
   for trespass to lands claim under a common holder, whose lands
   were partitioned by suit, a deed to one party for part of the lands,
   antedating the judgment in such suit, is inadmissible to show title,
   because precluded by the judgment in the partition suit.
2. Tenancy in Common—Trespass to Realty.—A co-tenant is entitled
   to injunction against other tenants in common to prevent the
   cutting and removing of timber from lands jointly owned by them.
3. Trespass—Action—Judgment.—In an action between tenants in
   common for trespass upon a tract of timber land, to sell the timber
   cut, and to distribute the proceeds of sale, it was error to adjudge
   to plaintiffs the whole of such proceeds of sale.

SMITH & COMBS for appellants.

WILL H. LAYNE and WALTER S. HARKINS for appellees.

Opinion of the Court by Judge Clarke—Affirming in
part and reversing in part.

Appellees filed this action in equity, in which they al-
leged that they and one of the defendants, Broadus
Layne, who refused to join in the suit, were the owners,
and in possession, of a certain described tract of land sit-

uated in Floyd county, Kentucky, on the Big Sandy River; that the defendants, other than Broadus Layne, had entered upon the land and cut, and were threatening to remove therefrom, valuable trees, and to convert, same to their own use, against the will and consent of the plaintiffs, the owners thereof. They prayed for an injunction against the defendants, other than Broadus Layne, to prevent the removal of the timber and for a receiver to take charge of the trees that had been cut, to sell same, and to pay to plaintiffs and defendant, Broadus Layne, the proceeds arising from the sale. By an amended petition, in which Broadus Layne joined as a plaintiff, it was alleged that the land in controversy was not correctly and accurately described in the original petition and another description was substituted therefor, the prayer being the same as in the original petition.

The defendants are the widow and children of Tandy M. Layne, deceased. Tandy M. Layne and the plaintiffs are children and heirs-at-law of Lindsey Layne, who died in 1888, intestate, a resident of Floyd county, and was survived by two other sons who are not parties to this action. Suit was filed in 1893 for a settlement of Lindsey Layne's estate and for a partition of several tracts of land among his nine sons, all of whom were parties to that action. The tract of land involved in the case at bar was also involved in the older partition suit; and plaintiffs and defendants in the instant suit are asserting title to the land in question under the judgment rendered in the partition suit, by which all parties to this action are bound, as that judgment has never been modified or vacated, except in one particular not affecting this litigation.

Plaintiffs rest their title solely upon that judgment. Defendants claim title in themselves not only under that judgment but also under a sheriff's deed to Tandy M. Layne, executed in 1902 in pursuance of a sale of the land, made in 1877, to Tandy M. Layne under an execution against Lindsey Layne and by adverse possession. These respective claims of title to the land in controversy were brought to an issue by appropriate pleadings. There was no motion to try any issue out of chancery. Proof was taken by deposition, and, upon submission, the chancellor entered judgment, adjudging the land in controversy to plaintiffs and enjoining the defendants, the widow and children of Tandy M. Layne, from remov-

ing timber from the land; adjudged to plaintiffs .the proceeds of the sale of the timber that had been cut from the land by the defendants, the timber having been sold by the court's receiver and commissioner and the proceeds paid into court. From that judgment, this appeal is prosecuted.

As both plaintiffs and defendants claim title under it we shall first consider the judgment entered in the suit for the settlement and partition of the estate and lands of Lindsey Layne, deceased. That judgment, after charging several of the heirs with advancements, adjudged "that Tandy M. Layne was the owner, and in possession, of the Ben Branham farm where he lives, situated in Floyd county, Kentucky, on the east side of Big Sandy River, and was also the owner of four-sevenths interest in the Cecil farm, adjacent to Branham farm, *including a fifty acre survey on the west side of the Big Sandy River*"; and that, "at the time said Tandy M. Layne acquired the Ben Branham farm and the interest in the Cecil land, the same was worth $2,000.00 more than any sum shown to have been paid by the said Tandy M. Layne; and the court adjudges that the excess in value is chargeable to the said Tandy M. Layne as an advancement; and adjudges that the said Tandy M. Layne be, and he is hereby, charged with an advancement of $2,000.00." And then, after charging some other heirs with advancements, it was further adjudged that, out of the lands owned by Lindsey Layne at his death, those, not having received any advancements, or advancements of less value than the others, should first be made equal and the remaining lands partitioned among all of the heirs of Lindsey Layne. The judgment then describes by metes and bounds, courses and distances, the several tracts of land Lindsey Layne owned and possessed at the time of his death, among which are a fifty acre tract on the west side of the Big Sandy River, opposite the Tandy M. Layne farm, and a tract of one hundred and fifty acres, the description of which is said to include "fifty acres of prior patented land." It is this fifty acre tract, described separately and said to be included in the one hundred and fifty acre tract, that is in controversy in this action.

Although this tract was thus twice described, once by itself and again as being included in a larger tract of land and was adjudged to belong jointly to all of the heirs of

Lindsey Layne, subject to equalization among them for advancements received, defendants claim that the same land was awarded to Tandy M. Layne under that part of the judgment where he was adjudged to be the owner of the Ben Branham farm, situated on the east side of the Big Sandy River, and of four-sevenths of the Cecil farm adjoining the same, "including a fifty acre survey on the west side of the Big Sandy River." They insist that this fifty acre survey on the west side of the river is the same fifty acres, later on in the judgment, adjudged to have been the property of Lindsey Layne at the time of his death, and described by metes and bounds and as included in the one hundred and fifty acre survey as prior patented land. There does not seem, from the record, to have been any other fifty acre survey on the west side of the river, to which this could have referred; but, if it did refer to the fifty acre tract described and centainly adjudged to belong to the heirs of Lindsey Layne, the judgment in these particulars is inconsistent, and the two parts are repugnant.

That the court did not intend to, and in fact did not, adjudge the fifty acre tract of land in controversy to the defendants is, in our judgment, quite clear. In the first place, by a particular description of the tract and by its inclusion in the description of a larger tract, this fifty acre tract on the west side of the river was adjudged to the heirs of Lindsey Layne. Besides, from that part of the judgment, which defendants claim awarded this particular tract to Tandy M. Layne, it will be seen that his title was recognized only to the Ben Branham farm on the east side of the Big Sandy River, where he lived, and to a four-sevenths interest in the Cecil farm adjacent to the Branham farm, which, as recited in the judgment, included a fifty acre survey on the west side of the river. But, it is quite clear, from the record, that neither the Ben Branham farm, where Tandy M. Layne lived and which was on the east side of the Big Sandy River, nor the Cecil farm adjacent thereto, included the fifty acre survey on the west side of the river. The judgment did not award to Tandy M. Layne the Ben Branham farm on the east side of the river, a four-sevenths interest in the Cecil farm adjacent thereto, *and* a fifty acre survey on the west side of the river; but only the Ben Branham farm and an interest in the Cecil farm on the east side of the river, which, it recited, included a fifty acre survey

on the west side of the Big Sandy River. The facts, however, show that no fifty acre survey on the west side of the river was included in either the Ben Branham farm, where Tandy M. Layne lived, or in the Cecil farm.

Moreover, the commissioners' report, upon which the judgment was based, shows that Tandy M. Layne had a deed for the Branham farm and for a four-sevenths interest in the Cecil farm, but that he had no title to any land on the west side of the river, although he was claiming the land in controversy under possession from his father and the expectation that his father would convey it to him. This claim of Tandy M. Layne to the land in controversy, which was the only way in which he was then claiming it, was expressly disallowed by the master. In addition to this, he was in the judgment as shown above, and in the master's report charged with a $2,000.-00 advancement, upon the basis that the amount paid to his father for the Ben Branham farm and the undivided interest in the Cecil land for which he had a deed was $2,000.00 less than its real value; and in fixing the value of his advancement there was no mention of the land in controversy. From this, it is apparent that the court, in fixing the amount of the advancement with which Tandy M. Layne should be charged, did not consider that he had received from his father the land in controversy. We are, therefore, convinced that Tandy M. Layne's claim of title to the land is controversy was not only not recognized in that judgment, but was expressly disallowed, and that the land was adjudged to belong to the heirs of Lindsey Layne, subject to equalization for the advancements made.

The title to the land herein involved, under the sheriff's deed now attempted to be asserted for defendants as the heirs of Tandy M. Layne, need not be considered; because it antedates the judgment in the settlement and partition suit and was not asserted by him in that action, wherein he was called upon to present and defend whatever title he had to the land he was then claiming; and he cannot now avoid that judgment upon any ground that he could have presented and did not present in that litigation. By that judgment he and those claiming through and under him are bound and estopped upon such claims as he could have presented as well as upon those he did present, as a basis for his title to the land. And since Tandy M. Layne was ad-

judged in that judgment to be a co-tenant with the other heirs of Lindsey Layne his possession was not adverse to them.

2. In the case at bar, the judgment, in so far as it determined that the defendants were not the sole owners of the land in controversy, is, as against plaintiffs, correct. But, it is not correct, in so far as it adjudged to plaintiffs title to the whole of the land, since by the judgment in the partition suit, under which plaintiffs claim title, it was adjudged that this land was owned and possessed by Lindsey Layne at the time of his death; and that it belonged jointly to all of his heirs, subject to the right of plaintiffs to be made equal with Tandy M. Layne, and other heirs of Lindsey Layne, who are not parties to this suit, for advancements received by them. It is therefore evident that not plaintiffs alone, but all of the heirs of Lindsey Layne owned the land in controversy. This question is not presented in brief by counsel for either side, and we do not know why all of the heirs of Lindsey Layne were not made parties to this action, or upon what theory plaintiffs were adjudged the sole owners of the land.

The judgment is prejudicially erroneous, in so far as it denies to the widow and children of Tandy M. Layne any interest in the land, as they, standing in the place of Tandy M. Layne, are upon the record here the owners of an undivided one-ninth interest therein, subject to plaintiffs' right to be first equalized out of the lands of Lindsey Layne with such of his heirs as are charged with advancements. Even though that interest may be nominal, or of no value if there is not enough land to make the equalization for advancements, they still have title to this undivided interest until the equalization is made; and they ought not, by this judgment, to be precluded from whatever rights they may have under the judgment in the partition suit.

Their title to an undivided interest in the land did not, however, give them the right to commit waste by cutting the timber therefrom; and they were properly enjoined from so doing, although they were co-tenants with plaintiffs (Rush v. Cornett, 169 Ky. 114), and that part of the judgment is affirmed.

Whether or not plaintiffs were entitled to the proceeds of sale of the timber cut from the land, as against the defendants and their co-tenants not parties to the

action, would depend upon whether they had been equalized for the advancements made to the other heirs, as plaintiffs had not received any advancements from their father. It is stated by counsel that the judgment in the partition suit has never been executed because of this and other litigation; and if this is true, the small sum of about $250.00 realized from a sale of the timber, which was awarded to plaintiffs, might be charged to them on final settlement of the Lindsey Layne estate; and that this can be done, we presume, is the reason that the question is not now raised by counsel for defendants, but in no event is this judgment binding upon the two heirs not parties hereto.

As we are unable, from the record, to direct the judgment that should be entered upon the return of the case, the judgment is reversed in so far as it denies to defendants title to an undivided one-ninth interest in the land, subject to the rights of equalization for advancements; and in so far as it adjudges to plaintiffs the whole of the proceeds of sale of the timber cut from the land by defendants; with directions that the parties be permitted to amend their pleadings and to take proof, if necessary, to enable the court to correctly dispose of the proceeds of the sale of timber.