

**NUMBER 13-09-00285-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROBERT SMEJKAL,** Appellant,

**v.**

**GARY SMEJKAL,** Appellee.

### On appeal from the County Court at Law of Calhoun County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

This is an appeal from a judgment ordering the payment of rent by appellant, Robert Smejkal, and the sale of property jointly owned by two brothers—Robert and appellee, Gary Smejkal. By his sole issue, Robert argues that the evidence supporting the trial court's finding of ouster is insufficient; therefore, the trial court erred in concluding that Robert owed Gary monthly rental payments while Robert and his family occupy the property. We affirm.

### I. BACKGROUND

The property in question was deeded to Robert and Gary by Robert F. O'Brien and his wife, Elsie, on February 21, 1964; it is situated in Seadrift, Texas; and it includes a

house in addition to the land. The brothers did not know about the existence of the deeded property until the administration of their mother's estate in 2005. Once the brothers discovered their interests in the property, they rented it to Lisa Buddemeier until the end of January 2007. After Buddemeier moved out of the property, Robert sent Gary several letters requesting that Gary remit one-half of the January 2007 rent and the security deposit paid by the tenant minus his responsibility for one-half of the expenses or, in other words, $412.51.[1] Gary responded to Robert's letters by notifying Robert that he incurred $1,504.88 in expenses to repair the property and that Robert owed Gary $512.64 for the expenses.[2]

In an effort to resolve the dispute, Robert filed his original petition on June 24, 2008, alleging negligence and conversion causes of action against Gary for allegedly mismanaging the property, declining to pay Robert money that he was owed, and refusing to return the property to Robert. In addition, Robert requested from the trial court a judicial partition of the property and sought temporary orders against Gary to prevent damage to the property.[3] While the case was pending in July 2008, Robert and his family moved into the property at issue in this case; Robert testified at trial that while at the property, he made several improvements, including painting the house, caring for the yard, fixing a water leak, replacing curtains, and having satellite television installed.

Gary subsequently filed an original answer to Robert's suit and a counterclaim. In his counterclaim, Gary requested that the trial court partition the property, appoint a receiver, and sell the property with the proceeds to be divided equally between Robert and Gary. Gary also asserted a contribution claim for past expenses, rent, and future

---

[1] Robert alleged that Buddemeier paid $375 rent for January 2007 and a $525 security deposit.

[2] In his letter to Robert, Gary noted that as of March 15, 2008, he had paid $479.59 for repairs and that the money was taken from the $525 security deposit paid by Buddemeier. Gary further noted that the house on the property had a faulty slab, broken living room tiles, and a broken main water line, which, to repair, would bring the total expenditures to $1,504.88.

[3] In his request for temporary orders, Robert alleged that Gary, in an effort to harass Robert, damaged the property by removing all doors, windows, and all personal property contained in the house.

contribution from Robert. In particular, Gary contended that fair market rent for the property was $400 per month, and that by moving onto the property, Robert ousted Gary from the property and, therefore, owed rent to Gary and should be required to pay "all utilities, ad valorem taxes, insurance, maintenance[,] and repair for the '*Residence*' during his occupancy . . . ." (Emphasis in original.)

After conducting a bench trial on Robert's petition and Gary's counterclaim, the trial court entered a judgment ordering the sale of the property. In its judgment, the trial court stated that the property was "not susceptible to fair and equitable partition in kind" and ordered that the property be sold "as is" with the proceeds from the sale to be divided equally amongst the two brothers. In addition, the trial court concluded that: (1) Robert's occupation of the property at the time of trial amounted to an "ouster" of Gary, and as a result, Gary is entitled to reasonable rental value—$187.50 per month, or, in other words, one-half of the rent that was paid by Buddemeier—from Robert for his use of the property until it is sold; and (2) Gary is entitled to an electric stove contained in the house as his personal property. This appeal followed.[4]

## II. ANALYSIS[5]

By his sole issue, Robert argues that the evidence at trial demonstrates that he did not oust or deny Gary use of the property and that Gary, in fact, agreed to allow Robert and his family to continue living at the property free of charge. Robert further argues that because the evidence is insufficient to support the trial court's finding of ouster, Gary is not entitled to fair rental value on a monthly basis for Robert's use of the property. Robert does not seek to overturn the court-ordered sale of the property; rather, he seeks a modification of the judgment with respect to the rental award.

---

[4] Robert also filed a post-judgment motion requesting a new trial and a modification of the trial court's judgment alleging that he discovered new evidence after trial which would have required the trial judge to recuse himself. After a hearing, the trial court denied Robert's post-judgment motion. This motion is not the subject of this appeal; therefore, we need not discuss it further. *See* TEX. R. APP. P. 47.1.

[5] Gary has not filed an appellate brief in this matter.

## A. Legal and Factual Sufficiency of the Evidence Supporting Ouster

When a party attacks the legal sufficiency of an adverse finding on an issue upon which it had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a legal sufficiency review, we review the evidence in the light most favorable to the verdict, crediting evidence that supports the verdict if reasonable jurors could and disregarding all contrary evidence that a reasonable jury could have disbelieved. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In conducting a factual sufficiency review, we consider and weigh all of the evidence in the case and set aside the verdict and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some "evidence of probative force" in support of the verdict. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003). The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. *Id.*

## B. Usage of Jointly-Owned Property by Cotenants

A tenancy-in-common gives any cotenant the right to possession of the property in which he or she owns an interest. *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963). A cotenant who occupies joint property is not required to account for the value of its use unless there is an ouster[6] or denial of use to other cotenants. *See Potka v. Potka*, 205 S.W.2d 51, 55 (Tex. Civ. App.–Waco 1947, writ ref'd n.r.e.) ("[S]uch joint owner is entitled alike to the possession of the common property rent free. It does not follow, however, that he will never be liable for rents or hire even upon his own possession. Where he ousts the

---

[6] Ouster is defined as a wrongful dispossession or exclusion of a party from real property; it is a notorious and unequivocal act by which one cotenant deprives another of the right to common and equal possession and enjoyment of property. *See Sadler v. Duvall*, 815 S.W.2d 285, 289 (Tex. App.–Texarkana 1991, writ denied); *Alexander v. Kennedy*, 19 Tex. 488, 493 (1857); *see also* BLACK'S LAW DICTIONARY 903 (7th ed. 2000).

other cotenants, or, what is the same thing, openly repudiates the cotenancy, he becomes liable for hire or rent of the property to the extent of their interests."); *see also Casso v. Fullerton*, No. 04-05-00905-CV, 2006 Tex. App. LEXIS 11246, at *5 (Tex. App.–San Antonio Sept. 13, 2006, pet. denied) (mem. op.).  A tenant-in-common may use jointly-owned property without liability for its rental value.  *See Eddings v. Black*, 602 S.W.2d 353, 358 (Tex. Civ. App.–El Paso 1980), *writ ref'd n.r.e.*, 615 S.W.2d 168 (Tex. 1981) (per curiam); *see also Casso*, 2006 Tex. App. LEXIS 11246, at *5.  However, if the tenant in possession rents the property to a third person, he or she must account to the other cotenant for the proceeds received, because the proceeds are profits received beyond the permitted personal occupancy and use.[7]  *Potka*, 205 S.W.2d at 55; *see Trevino v. Trevino*, 64 S.W.3d 166, 174 (Tex. App.–San Antonio 2001, no pet.) (holding that cotenants are required to share income generated from property held in common).  In addition, a cotenant must act in a manner that is not detrimental to the other cotenant's ownership and enjoyment of the property.  *See Scott v. Scruggs*, 836 S.W.2d 278, 282 (Tex. App.–Texarkana 1992, writ denied); *see also Fuqua v. Fuqua*, 750 S.W.2d 238, 246 (Tex. App.–Dallas 1988, writ denied) ("Although each tenant in common has a right to occupy the jointly owned property, none may occupy it to the exclusion of the others.") (citing *Sayers v. Pyland*, 139 Tex. 57, 64, 161 S.W.2d 769, 773 (1942)).

**C. Discussion**

At trial, Robert testified that he owned several other properties in Texas, including a ranch in Tivoli, Texas, but that he was only living at the disputed property in order to make repairs.  On appeal, Robert argues that Gary's letter dated March 15, 2008, and Gary's testimony at trial evidenced an agreement between the brothers that Robert could live at the property rent-free.  However, contrary to Robert's contentions, Gary's letter and

---

[7] A cotenant is under no obligation to rent jointly-owned property.  *See Eddings v. Black*, 602 S.W.2d 353, 358 (Tex. Civ. App.–El Paso 1980), *writ ref'd n.r.e.*, 615 S.W.2d 168 (Tex. 1981) (per curiam); *see also Casso v. Fullerton*, No. 04-05-00905-CV, 2006 Tex. App. LEXIS 11246, at *6 (Tex. App.–San Antonio Sept. 13, 2006, pet. denied) (mem. op.).

testimony at trial does not indicate such an agreement.  Rather, Gary's letter merely states Robert's financial obligation for a portion of the repairs made to the property after Buddemeier moved out and provides the following:

I am suggesting that:

1. You make an offer to buy out my share of this house.  Or,

2. You make arrangements to have the house repaired at your expense so it can be placed on the market for sale.  Or,

3. The house is put on the market for sale **AS IS** with no repairs being made to the floors, broken water line, windows[,] or damaged cabinets.

(Emphasis in original.)  At no point in the letter does Gary acquiesce to Robert's moving onto the property for an extended period of time rent-free.  Furthermore, Gary's testimony at trial does not reflect an agreement between the brothers for Robert and his family to live on the property rent-free.  Gary did testify that the parties entered into a rule 11 agreement that allegedly provided that Gary would not seek to evict Robert from the property until the dispute was tried in court.[8]  *See* TEX. R. CIV. P. 11.  However, Gary later testified that Robert's occupation of the property prevented Gary from procuring personal property he had on the property—an electric stove—and from renting out the property to other tenants. *See Scott*, 836 S.W.2d at 282; *see also Fuqua*, 750 S.W.2d at 246.  Moreover, on cross-examination, Robert admitted that he:  (1) allowed his son to continuously live at the property rent-free so that he could be closer to his job[9]; (2) made several modifications to the property without consulting Gary as to each modification; (3) did not pay rent to Gary at any time for sole usage of the property; and (4) had satellite television installed at the property, which seems to suggest that Robert intended to reside at the property for a longer period of time.  Both Gary and Robert testified that they do not get along with each other and that a partitioning or sharing of the property was not possible; therefore, Robert's

---

[8] The rule 11 agreement that was purportedly entered into by both Robert and Gary was not entered into evidence and, therefore, is not a part of the appellate record.

[9] Robert did not establish at trial that his son is a cotenant that had a legal right to reside at the property without liability for its rental value.

moving onto the property effectively deprived Gary of equal usage and enjoyment of the property. *See Scott*, 836 S.W.2d at 282; *Fuqua*, 750 S.W.2d at 246; *see also Todd*, 365 S.W.2d at 160.

In reviewing the evidence adduced at trial, we cannot say that the trial court's conclusion as to ouster was supported by legally insufficient evidence. *See City of Keller*, 168 S.W.3d at 827; *Dow Chem. Co.*, 46 S.W.3d at 241; *see also Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998) (holding that in a legal sufficiency challenge, we must view all of the evidence in the light most favorable to the prevailing party and indulge every reasonable inference in favor of the trial court's judgment). Moreover, we cannot say that the trial court's finding that Robert ousted Gary from the property is against the great weight and preponderance of the evidence as to be manifestly unjust or clearly wrong. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761-62. Ordinarily, a cotenant may use jointly-owned property rent-free; however, because we have concluded that the trial court's finding of ouster was supported by legally and factually sufficient evidence, we hold that the trial court did not err in awarding Gary fair rental value of $187.50 per month, or one-half of the $375 in monthly rent that had previously been paid by Buddemeier. *See Potka*, 205 S.W.2d at 55. Accordingly, we overrule Robert's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 19th day of November, 2009.